IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA FORD, *et al.*, :<br>    Plaintiffs, : | |
| : | |
| v.    : | CIVIL ACTION NO. 22-CV-5059 |
| : | |
| JIM KENNEY, *et al.*, :<br>    Defendants. : | |

### MEMORANDUM OPINION

Angela Ford and Shalayna Smith have signed a civil rights Complaint naming as Defendants Philadelphia Mayor Jim Kenney, Police Commissioner Danielle Outlaw, and John McNesby, the president of the Fraternal Order of Police ("FOP").  Each Defendant is named in their official as well as individual capacities.  Ford asserts she is the mother of Elgin Battle Sr., deceased, and Smith asserts she was Battle's fiancé and is the mother of three minor children with Battle.  They bring claims on their own behalf, on behalf of the minor children, and possibly on behalf of the decedent's estate for civil rights violations, wrongful death, and negligence.  Ford and Smith have also moved to proceed *in forma pauperis*.  For the following reasons, the Motion to Proceed *In Forma Pauperis* will be granted and the Complaint will be dismissed.

I.    **FACTUAL ALLEGATIONS**

Ford and Smith relate a tragic story.  On July 16, 2021, Battle was killed in front of his home when a gunman shot into a crowd of people.  Since his death, his family has pleaded with law enforcement for justice but have been told that the Philadelphia police are overwhelmed and "that the police would retaliate if they complainted [sic]."

Ford and Smith refer to a news article allegedly exposing "widespread abuse" by Philadelphia police officers of the provision in the City's collective bargaining agreement with the FOP allowing officers to receive injury time off with pay.  They allege that "[t]he Mayor,

Police Commissioner and police Union has [sic] tolerated rampant abuse for years."

Ford and Smith assert that the reduction in personnel due to this abuse "has lead [sic] to a reduction in the number of police patrolling the streets in neighborhoods of color, and a significant difference in the response time in black and white communities." They allege a difference in police response times in different neighborhoods, alleging "it is the embodiment of racism." They allege that the Defendants' "actions or inactions proximately caused [Battle's] death and a delay in justice for his killing." They assert claims pursuant to 42 U.S.C. § 1983, as well as state law claims for wrongful death and negligence, and seek unspecified injunctive and declaratory relief as well as money damages.

## II.  STANDARD OF REVIEW

Ford and Smith are granted leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). In making such a determination at this stage, courts accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citation omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Ford and Smith are proceeding *pro se*, the Court construes their allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

When allowing a plaintiff to proceed *in forma pauperis*, the Court must also dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. 28 U.S.C. § 1915(e)(2)(B); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## III. DISCUSSION

Ford and Smith assert constitutional claims as well as state law claims. The vehicle by which their federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Representative Claims

Ford and Smith bring claims in their own names. Smith also appears to bring claims on behalf of her and Battle's children who are named as Plaintiffs but did not sign the Complaint. Additionally, while less clear, Ford may be attempting to bring claims on behalf of Battle's estate. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may choose to conduct his or her own case *pro se* or instead retain counsel. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although individuals may represent themselves *pro se*, a non-attorney may not represent other parties in federal court. *See*

3

*Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Osei-Afriyie*, 937 F.2d at 882 ("We hold that Osei-Afriyie, a non-lawyer appearing *pro se*, was not entitled to play the role of attorney for his children in federal court.").

One such context is the representation of the estate of a decedent where the non-attorney is a non-beneficiary administrator of the intestate estate or there are other beneficiaries of the estate in addition to the administrator. *Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 171 (3d Cir. 2018) ("We turn to whether a non-attorney, non-beneficiary administrator like Murray conducts her 'own case' when representing an estate in federal court. 28 U.S.C. § 1654. The answer is no."). As reasoned by the Third Circuit in *Murray*, "[i]f an estate has one or more beneficiaries besides the administrator, then the case is not the administrator's own because the interests of other parties are directly at stake. The interests of other parties, such as beneficiaries, may not be represented by a non-attorney administrator of an estate." *Id*.

Ford does not allege she has been named an administratrix of Battle's estate. There is also no suggestion that Battle had a will in which Ford was named as his executrix. Even if Ford had asserted she was named to act for Battle's estate, under Pennsylvania's intestate provisions, Battle's children would be deemed to be his intestate beneficiaries. *See* 20 Pa. Cons. Stat. § 2103 ("The share of the estate, if any, to which the surviving spouse is not entitled, and the entire estate if there is no surviving spouse, shall pass in the following order: (1) Issue. – To the issue of the decedent."). For this reason, to the extent she appears to do so, Ford may not assert claims on behalf of Battle's estate unless she hires an attorney.

Accordingly, any claim that Ford and Smith assert in a representative capacity on behalf

of Battle's estate or Battle's children must be dismissed without prejudice.

### B. Ford and Smith's Personal Claims

The Court understands Ford and Smith to be asserting constitutional claims pursuant to Section 1983 on their own behalf against Mayor Kenney, Commissioner Outlaw, and FOP President McNesby in the Defendants' official and individual capacities.[1]  Ford and Smith assert that the reduction in police personnel due to abuse of the paid injury time off policy has caused a reduction in the number of police patrolling the streets in neighborhoods of color, presumably including the one where Battle was murdered, and a significant difference in police response times in respect to black and white communities.  Finally, they assert that this difference in police response times was the proximate cause of Battle's death and the failure to adequately investigate the crime.  The Court understands Ford and Smith to be asserting a violation of the Equal Protection Clause of the Fourteenth Amendment and a substantive due process claim based on a state-created danger theory.  They also appear to raise a claim they would suffer retaliation if they complained about the police handling of the investigation of Battle's murder as well as a constitutional claim that the City failed to investigate the crime.  The Court will first discuss the civil rights claims brought against Mayor Kenney and Commissioner Outlaw in their

---

[1] Defendant McNesby is alleged to be the President of the Philadelphia FOP and appears to have been named as a defendant based solely on that role since there is no allegation that he was involved in the investigation of Battle's murder or in the allocation of police resources in his role as a police officer.  The civil rights claims asserted against McNesby in his individual capacity pursuant to Section 1983 are not plausible and must be dismissed because labor representatives are generally not considered state actors.  *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp.2d 15, 24 (E.D.N.Y. 2006).  To the extent Ford and Smith assert an official capacity claim against McNesby, that claim would not cognizable because the claim is essentially one against the FOP and labor unions are typically not state actors under Section 1983.  *Johnson v. Int'l Bhd. of Teamsters (Loc. 830)*, 256 F. App'x 481, 483 (3d Cir. 2007); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also Stevens v. Jefferson*, 421 F. App'x 639, 640 (7th Cir. 2011) ("Unions and union officials are not state actors." (citation omitted)).  The Plaintiffs have moreover failed to plausibly allege that McNesby or the FOP acted under color of state law, *i.e.*, facts "suggesting that the state was responsible for the [u]nion or that the [u]nion was acting under color of state law."  *See Johnson*, 256 F. App'x at 483 (citation omitted).  For these reasons, all constitutional claims against McNesby will be dismissed with prejudice.

individual capacities.

### 1. Individual Capacity Claims Against the Mayor and Commissioner

#### a. Retaliation

Ford and Smith allege that when they pleaded with law enforcement to investigate Battle's murder, they were told by an unnamed person that the Philadelphia police are overwhelmed and "that the police would retaliate if they complainted [sic]." They offer no other allegations to support their retaliation claim against Mayor Kenney and Commissioner Outlaw. In order to plead a plausible retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003) (internal quotations omitted). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir. 2000)).

The Plaintiffs' individual capacity retaliation claim suffers from several defects. First, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution"). Assuming for purposes of statutory screening that their urging police to investigate Battle's murder is constitutionally protected conduct, Ford and Smith do not allege that Mayor Kenney or Commissioner Outlaw acted personally to retaliate against them for that conduct. Second, the allegation of retaliation is speculative since they assert only that they "would" suffer retaliation if they continued to complain, rather than that they actually did suffer an act of retaliation. Moreover, their retaliation claim is unsupported by any facts and conclusory, and is thus insufficient to state a plausible claim. *Iqbal*, 556 U.S. at 678.

For these reasons, the retaliation claim must be dismissed. However, Ford and Smith will be afforded the opportunity to file an amended complaint if they are capable of stating a plausible retaliation claim against a defendant who was personally involved in an act of retaliation.

b. **Equal Protection Claim**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Notably, Ford and Smith do not specifically allege that *they* were treated differently from other persons who are similarly situated, but rather appear to imply that Philadelphia police, either due to personnel shortages or other reasons, treated the investigation into Battle's murder in a predominately black neighborhood differently from a hypothetical similar crime occurring in a predominantly white neighborhood.

While courts have recognized that unequal policing based on racial or other suspect

classifications can violate the Equal Protection Clause,[2] Ford and Smith fail to allege a plausible claim based on this theory.  To be plausible, a complaint must allege facts to establish that the plaintiff is "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class." *Green v. Chester Upland Sch. Dist.*, 89 F. Supp.3d 682, 693 (E.D. Pa. 2015), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016).  An equal protection claim must also allege the existence of "purposeful discrimination."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014).  Purposeful discrimination requires facts showing a discriminatory state of mind.  *Iqbal*, 556 U.S. at 680-83.  "Allegations about other people's mental states are conclusory unless they are linked to facts from which the relevant mental state might be inferred."  *Burnett v. Springfield Twp.*, 2014 WL 3109963, at *5 (E.D. Pa. July 8, 2014).

While not specific, Plaintiffs appear to imply that Battle lived in a predominantly black neighborhood, but Ford and Smith do not specifically allege that either they or Battle was a member of a protected class.  Assuming for purposes of statutory screening that Battle, Ford, and Smith are African American, the generalized allegation that there are different response times in predominantly black and predominantly non-black neighborhoods lacks specificity and fails to assert plausibly the "similarly situated" and "treated differently" elements of an equal protection violation.  They also fail to allege the discrimination was purposeful since they appear to attribute the reduction in the number of police officers to the paid injury time off policy and its

---

[2] A state's selective denial of "its protective services to certain disfavored minorities" violates the Equal Protection Clause.  *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.,* 489 U.S. 189, 197 n.3 (1989) (citing *Yick Wo v. Hopkins,* 118 U.S. 356 (1886)); *see, e.g.*, *Neighborhood Action Coal. v. City of Canton,* 882 F.2d 1012, 1017 (6th Cir. 1989) ("This constitutional amendment is violated when a police department fails to respond to calls from a neighborhood because of the racial make-up of the neighborhood.").  Indeed, the "selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection."  *Hilton v. City of Wheeling,* 209 F.3d 1005, 1007 (7th Cir. 2000).

alleged abuse rather than, for example, that Mayor Kenney or Commissioner Outlaw purposefully directing police resources away from predominantly black neighborhoods. Absent any link between the allegation of unequal distribution of police resources and purposeful discrimination on the parts of the Defendants, the equal protection claim remains conclusory.

For these reasons, the equal protection claim must be dismissed. However, because it may be possible that Ford and Smith can assert plausible claims that they suffered a violation of their equal protection rights from allegedly unequal policing based on racial or other suspect classifications, they will be permitted an opportunity to file an amended complaint if they are capable of curing the defects the Court has identified.

### c. State-Created Danger Claim

The state-created danger theory "embodies the principle that the government has an obligation under the Fourteenth Amendment's Due Process Clause 'to protect individuals against dangers that the government itself creates.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 176 (3d Cir. 2018)). For purposes of statutory screening of this type of claim, the following four elements must be alleged plausibly:

(1) [T]he harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Shields v. Wiegand*, 2022 WL 4586124, at *5 (E.D. Pa. Sept. 29, 2022) (quoting *Haberle*, 885


F.3d at 176-77).

       Ford and Smith fail to allege facts to support plausibly any of the elements of a due process violation based on the state-created danger theory. While they allege that the Defendants tolerated abuse of paid injury time off for police officers and this resulted in diminished levels of police presence in predominantly black neighborhoods, there is no suggestion that this conduct caused harm to them, or foreseeably caused Battle's tragic death, who died as a result of an act of violence by a non-state actor of which he was apparently not even the target. Moreover, the United States Supreme Court has held that a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197. Failing to ensure that the paid injury time off policy was administered appropriately or that it did not result in unequal police presence in various neighborhoods does not, without more, rise to a level of conscious-shocking behavior. *Cf. Pagan v. Rivera*, 2020 WL 2060274, at *1 (D.N.J. Apr. 29, 2020) (concluding it shocked the conscious that police officers told a victim of domestic violence to reenter her house unescorted to retrieve belongings where she was attacked by her boyfriend against whom she had a protection order).

       Ford and Smith also fail to allege there was a relationship between themselves (or Battle) and the state such that Battle could be deemed to be a foreseeable victim of a drive-by shooting or that they could be members of a discrete class that could potentially suffer harm due to the lack of police presence in predominately black neighborhoods. Finally, they do not plausibly allege that Mayor Kenney or Commissioner Outlaw affirmatively used their authority in a way that created a danger to Ford and Smith or rendered them more vulnerable to danger than had the Defendants not acted at all. It follows, then, that they have not pled a plausible state-created danger claim on their own behalf. Accordingly, this claim shall also be dismissed.

#### d. Failure to Investigate Claim

Finally, the Court understands Ford and Smith to assert an independent civil rights claim based on a failure to investigate Battle's murder.[3] This claim is also not plausible. An allegation that authorities failed to investigate and solve a crime, "without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotation omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Accordingly, the claim will be dismissed.

### 2. Official Capacity Claims

Ford and Smith checked the box on the form they used to file their civil rights Complaint indicating that they have named Mayor Kenney and Commissioner Outlaw in their official as well as individual capacities. Official capacity claims against Philadelphia officials are indistinguishable from claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* To plead a basis for liability against a municipal entity such as the City of Philadelphia under Section 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that

---

[3] Although Plaintiffs allege that the Defendants' actions led to a "delay in justice" for Battle's killing, they do not allege that this delay, as opposed to the delay in police response time, is impacted by race. Accordingly, the Complaint does not allege a plausible basis for an equal protection claim based on the handling of any investigation into Battle's killing.

11

custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries. *Estate of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). To do so for a policy claim, plaintiff must allege an "affirmative link" between the policy and the particular constitutional violation alleged. *Bielevicz*, 915 F.2d at 850. For a custom to be the proximate cause of an injury, a plaintiff must allege that the Defendant "had knowledge of similar unlawful conduct in the past . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [the plaintiff's] injury." *Estate of Roman*, 914 F.3d at 798 (internal quotation omitted).

Construed liberally, Ford and Smith allege that, as a policy or custom, the Mayor and Police Commissioner tolerated abuse by Philadelphia police officers of the provision in the City's collective bargaining agreement with the FOP allowing officers to receive injury time off with pay. They conclude that the resulting lack of police manpower "proximately caused [Battle's] death and a delay in justice for his killing." The Court is constrained to find that proximate cause between the stated policy and any injury suffered by Ford and Smith is not plausible. Ford and Smith fail to allege plausibly that the unequal police presence resulting from

the Defendants' alleged toleration of abuse of time off by police officers caused them to suffer an equal protection violation, or that Battle—and the Plaintiffs by extension—were foreseeable victims of the consequences of this policy in order to support a state-created danger theory. Thus, there is no "affirmative link" between the alleged policy and the particular constitutional violations alleged. *Bielevicz*, 915 F.2d at 850. Finally, because there is no constitutional right to have crimes investigated by the police, the assertion that the policy delayed "justice for [Battle's] killing" is also insufficient to allege a plausible connection between the alleged policy or custom and any injury suffered by Ford and Smith. It follows, therefore, that Plaintiffs cannot assert that the alleged policy or custom let to any injury in order to support official capacity/municipal liability claims against Mayor Kenney and Commissioner Outlaw.

### 3. State Law Claims

Ford and Smith also assert state law claims for wrongful death and negligence. Because the Court has dismissed the federal constitutional claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). Individuals are citizens of the state where they are domiciled,

meaning the state where they are physically present and intend to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). It is the Plaintiffs' burden to establish diversity of citizenship. *See, e.g.*, *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011); *Those Certain Underwriters at Lloyd's London v. Sophisticated Invs. Inc.*, 2022 WL 507437, at *1 (E.D. Pa. Feb. 18, 2022) ("The party asserting diversity jurisdiction bears the burden of showing that the complete diversity and amount-in-controversy requirements are satisfied.").

Ford and Smith do not allege the citizenship of the parties. Rather, they provide only Pennsylvania addresses for themselves and the Defendants, which suggests that they and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, they have not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims they intend to pursue. All state law claims shall, thus, be dismissed without prejudice for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons stated, Ford and Smith's case must be dismissed. All claims they seek to raise in a representative capacity and all state law claims will be dismissed without prejudice. Their claims raised in a personal capacity asserting an equal protection violation and retaliation will also be dismissed without prejudice but with leave to file an amended complaint if Ford and Smith are capable of curing the defects the Court has identified in those claims. The state-created danger claim and the failure to investigate claim will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

**WENDY BEETLESTONE, J.**